## Walker *v.* The State.

*Indictment for Embezzlement.*

1.  *Embezzlement; sufficiency of indictment.*—Under the provisions of the statute (Code of 1886, § 3810; Code of 1896, § 4673), an indictment for embezzlement need not describe the character or kind, nor state definitely the amount of money alleged to have been embezzled; and an indictment which charges the embezzlement of "money to about the amount of two hundred and ten dollars," is sufficient and not subject to demurrer for failure to describe the character, or to state definitely the amount, of money alleged to have been embezzled.

2.  *Same; same.*—In an indictment which charges the defendant with embezzlement of money, which came into his possession as agent of a manufacturing corporation, it is not necessary to set out at length the act incorporating such manufacturing company, or allege that said act was still in force and effect at the time said offense was alleged to have been committed.

3.  *Trial and its incidents; mistrial; discharge of jury by operation of law.*—Where a jury remains together without rendering a verdict until twelve o'clock, midnight, on the last day of the term of court, such jury becomes discharged by operation of law, and there is a mistrial; and as to the effect of such mistrial, the fact that the defendant was not present in court at the time such jury was discharged is immaterial.

4.  *Embezzlement; admissibility of evidence.*—On a trial under an indictment for embezzlement, where it is shown that the defendant at the time of the alleged embezzlement was acting as the agent of a manufacturing company under authority of a contract entered into

[Walker v. .The State.]

by the defendant ·and said company, evidence that the agent of the company, in making with the defendant the contract of employment, stated to the defendant that said company would pay his office rent and other designated expenses, as it had done theretofore, and that the defendant refused to sign the contract until such promises or statements were made by the company's agent, is relevant and admissible; and this is true, even though there was no provision for the payment of such expenses in the written contract under which the defendant held his appointment as agent.

5. *Same; same.*—In such a case it is permissible for the defendant to prove that while acting as such agent some of the funds which he is charged with having embezzled, were applied to the payment of office rent and other expenses ·which. the company's agent agreed could be done, before the contract of employment was entered into.

6. *Same; same.*—Where an agent is prosecuted for embezzling funds collected under a written contract of agency, parol evidence for the State as to how much commissions the defendant was entitled to receive on collections made by him, is inadmissible; the written contract of agency regulating the amount of the commission to be retained by the defendant.

7. *Same; same.*—On a trial under an indictment which charges the defendant, as agent of ·a manufacturing company, with having embezzled certain funds which came into his hands, where it is shown that during the time the defendant was acting as agent of said company, another agent of the company in the line of his duty, checked up the defendant's accounts, resulting very favorably to the defendant, and made his written report to the company accordingly, and that the defendant paid to said agent the amount ascertained to be due on that account, such report of the agent is admissible in evidence as a part of the *res gestæ*; the statement made being as between the parties *prima facie* correct, and the defendant being entitled to the benefit of it, when charged with embezzlement of funds theretofore coming to his hands.

8. *Same; same.*—On a trial under an idictment for embezzlement, the defendant is not entitled to be credited with commissions on moneys not remitted to his principal, or which were not accounted for in a way that was equivalent to a legal payment thereof to the principal.

9. *Evidence of fraudulent intent; burden of proof.*—On a trial under an indictment which charges the defendant, as the agent of a corporation, with embezzlement of funds which came into his possession in the line of his duty, and it is shown that the defendant was entitled to certain commissions, it is a question for the jury to determine whether the defendant, in retaining funds as commissions, which, by the contract, he was not entitled to retain, acted with a fraudulent intent, at the time of the appropriation, to deprive his employer of the money so appropriated; the burden is upon the State to prove that there existed such fraudulent intent in the mind of the defendant at the time of the appropriation.

10. *Same; same.*—In such a case, where a witness testified that as the agent of the company, whose funds the defendant is charged with having embezzled, he made out an account against the defendant purporting to show sundry items of collections of money which the defendant had made as the agent of the company, and that the defendant admitted having collected and failed to pay over the amount set out in such account, and the witness further testified that he did not make out the account at the time the defendant admitted the collections,.nor while he was present, but made it from notes some time after he went over the accounts with the defendant, but he did not testify from what data he made the notes, or to the truth of what the notes showed, it is not permissible for such witness to refer to the account so made by him, for the purpose of refreshing his recol-lection, and such account can not go to the jury for the purpose of enabling them to better remember what such witness testified.

11. *Same; same.*—On a trial under an indictment which charges the defendant with embezzlement of money which has come into his possession as agent of a manufacturing company, the statement.of the managing agent of said company to a surety on the defendant's bond that the defendant was not in any trouble with the company, is inadmissible, although it was shown by the transaction that prior to the making of such statement the defendant had collected money for which he did not account.

12. *Same; when charge to the jury invasive of its province.*—On a trial under an indictment for embezzlement, a charge which instructs the jury that "If there is any one single fact proved to the satisfaction of the jury by a preponderance of evidence which is inconsistent with the guilt of the defendant, this is sufficient to raise a reasonable doubt, and if the jury entertains such a doubt they should acquit the defendant," is invasive of the province of the jury and is properly refused.

13. *Same; charge properly refused when it ignores certain tendencies of the evidence.*—On a trial under an indictment for embezzlement, where the defendant claimed and offered evidence tending to show that he did not owe his principal anything, if he was given due credit for the commissions that were agreed to be allowed him before the written contract of agency was entered into by him, a charge which instructs the jury that "If they believe that if the defendant were given due credit for his commissions, * * * he did not owe the company [his principal] anything, the jury must find the defendant not guilty," is erroneous, in that it ignores all question of the honesty or good faith of defendant's claim to the commissions to which he asserted a right.

14. *Charge to the jury; sufficiency of evidence.*—In a criminal case, a charge which instructs the jury that "If the evidence is not so con-vincing as to lead the minds of the jury to the conclusion that he [the defendant] is guilty, they must find him not guilty," asserts a correct proposition and should be given.

[Walker v. The State.]

15. *Same; reasonable doubt.*—A charge which instructs the jury "that a reasonable doubt is a doubt for which a reason can be given," asserts a correct proposition of law, and should be given at the request of the defendant.

16. *Same; same.*—A charge which instructs the jury "that they must find the defendant not guilty, unless the evidence against him should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the offense imputed to him," is erroneous in that it omits the word *reasonable* as descriptive of "hypothesis."

17. *Same; when argumentative and invasive of the province of the jury.*—A charge which instructs the jury that "they can take into consideration the fact, if it be a fact, and from the evidence such is a fact, that the defendant," who is charged with embezzlement, tendered to his principal all that was due, "together with all the other evidence," in determining whether or not there was a criminal intent in the defendant's action, is both argumentative and invasive of the province of the jury.

18. *Embezzlement; charge to the jury; when misleading.* - On a trial under an indictment for embezzlement, a charge which instructs the jury "that they must believe from the evidence beyond a reasonable doubt that the defendant embezzled the amount of money charged in the indictment, and that he did it willfully and intentionally, and converted it to his own use, before they can convict," is properly refused, in that it might mislead the jury to believe that there could be no conviction unless the full amount charged in the indictment was embezzled.

19. *Charge to the jury; right of jury to consider the conduct of the witness in determining the credibility of his testimony.*—A charge which instructs the jury "that they may look to the conduct of the witness on the stand and his manner of testifying to determine what credit they will give him," is erroneous.

20. *Same; sufficiency of evidence.*—Charges which instruct the jury "that if they can explain the testimony in this case on any hypothesis with the defendant's innocence, they must acquit him," or "that they must believe the evidence conclusively as presented by the State before they can find the defendant guilty," are erroneous and properly refused.

21. *Same; same.*—A charge in a criminal case, which instructs the jury that before the jury are authorized to convict the defendant in the case, they must believe from the evidence to a moral certainty that he is guilty of the offense charged in the indictment, and unless the jury are so satisfied from the evidence, they must acquit the defendant, asserts a correct proposition of law, and its refusal is error.

22. *Same; reasonable doubt arising out of any part of the evidence* —In a criminal case, a charge which instructs the jury that "If the jury, upon considering all the evidence, have a reasonable doubt about the

defendant's guilt, arising out of any part of the evidence, they must find the defendant not guilty," asserts a correct legal proposition, and its refusal constitutes a reversible error.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

The indictment under which the appellant was tried and convicted was as follows : (1.) "The grand jury of said county charge that before the finding of this indictment, Robert M. Walker, *alias* Bob Walker, who was at the time the agent of The Singer Manufacturing Company, an incorporated company, incorporated under the laws of the State of New Jersey, embezzled or fraudulently converted to his own use, money to about the amount of two hundred and ten dollars, which came into his possession by virtue of his employment as such agent of said The Singer Manufacturing Company, an incorporated company."

(2.) "And the grand jury of said county further charge that Robert M. Walker, *alias* Bob Walker, an agent or bailee of The Singer Manufacturing Company, an incorporated company, embezzled or fraudulently converted to his own use, money to about the amount of two hundred and ten dollars, which came into his possession by virtue of his employment as such agent or bailee of the owner of said money, said The Singer Manufacturing Company, an incorporated company."

(3.) "And the grand jury of said county further charge that Robert M. Walker, *alias* Bob Walker, being the agent of The Singer Manufacturing Company, an incorporated company, incorporated under the laws of the State of New Jersey, did embezzle or fraudulently convert to his own use, money to about the amount of two hundred and ten dollars, the personal property of The Singer Manufacturing Company, an incorporated company as aforesaid, which said money had come into the possession of the said Robert M. Walker, *alias* Bob Walker, by virtue of his employment as such agent, against the peace and dignity of the State of Alabama."

Each of the counts of this indictment were demurred to upon the following grounds : 1st. It fails to aver or describe the character or kind of money alleged to have been converted or embezzled by the defendant. 2d. Because each of said counts fails to aver or sufficiently

[Walker v. The State.]

describe the act or acts incorporating said sewing ma-
chine company, or that said act is still in force and
effect, or was in force and effect at the time said offense
is alleged to have been committed. 3d. That each of
the counts of the complaint fails to charge any certain
or specific amount embezzled by the defendant. The
court sustained the demurrer as to the second, and over-
ruled them as to the first and third counts. The indict-
ment was returned into court on March 19, 1896. At
the fall term, 1896, of the circuit court of Cullman
county, there was a mistrial of the defendant, and the
minute entry in said cause at that term of the court,
after setting out the fact of the joinder of issue on the
plea of not guilty, and the submission of the cause to
the jury, then recites : "And while said jury were con-
sidering said cause, the time fixed by law for the ad-
journment of this court having arrived and the said jury
having not agreed by twelve o'clock on Saturday night,
the 3d day of October, 1896, the day fixed by law for
adjournment of this court, and defendant being in open
court, it is ordered by the court that the said jury is
hereby discharged, and a mistrial be entered and this
cause be continued."

There were several motions made by the defendant to
correct this minute entry, setting out the fact that such
entry was erroneous and void, in that the judge of the
court was not present and the defendant was not present
at the time of the discharge of the jury. These motions
were all overruled.

On the trial of the cause there was introduced two
contracts which were made between the Singer Manu-
facturing Company and the defendant, in which the de-
fendant was appointed an agent of the said Singer
Manufacturing Company, and was authorized to trans-
act the business of said company within a designated
territory. The evidence for the State tended to show
that during the existence of his agency under said con-
tracts, the defendant had obtained money belonging to
the Singer Manufacturing Company for which he had
not accounted, and which he had not turned over to the
said company, but had appropriated to his own use.
The evidence for the defendant tended to show that he
had not misappropriated any of the funds belonging to
said company, and that if the credits were allowed him

for old machines and for other items which the contract provided for, he would not be indebted to the said company in any amount. His evidence further tended to show that the defendant, while he did not recognize his liability, offered to pay to the agent of the Singer Manufacturing Company the amount which its agent said was due, if said agent would give him a receipt for the payment in full. The evidence for the State was in conflict with this last mentioned testimony for the defendant.

Upon the introduction of one E. E. Griswold, as a witness for the defendant, he testified that he was present at a conversation which was had between the defendant and Mr. Forbes, the agent of the Singer Manufacturing Company, and heard the defendant say to Mr. Forbes that he did not owe the said company anything, if they would give him credit for the old machines and his commission; and that he heard the defendant further say that if they would give him a receipt he would pay the amount claimed to be due. This witness further testified that in October, 1895, he had a conversation with Mr. Walls, who was agent for the Singer Manufacturing Company, in which he asked him whether or not the defendant was short in his account, stating to said Walls that he, the witness, was surety on the defendant's bond; that said Walls told him that the defendant was not in any trouble with the said company, and further said: "Some people have prejudices against Mr. Walker, but he's all right, and I would advise you not to come off his bond. We have such a perfect system of checking, that it is impossible for him, anyway, to get more than one machine ahead of the company." On motion of the State the testimony of this witness, which is quoted, was excluded from the jury. To this action of the court the defendant duly excepted. The other rulings of the court are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The jury are instructed that if there is any one single fact proved to the satisfaction of the jury by a preponderance of evidence which is inconsistent with the guilt

[Walker v. The State.]

of the defendant, this is sufficient to raise a reasonable doubt, and if the jury entertains such a doubt they should acquit the defendant." (2.) "The court charges the jury that the defendant can not be convicted for the fact, if it be a fact, that Mr. Walls embezzled or failed to turn over some of the money." (3.) "The court charges the jury, if they believe that if the defendant were given due credit for his commissions and the old machines, he did not owe the company anything, the jury must find the defendant not guilty." (4.) "The court charges the jury that if the evidence is not so convincing as to lead the minds of the jury to the conclusion that he is guilty, they must find him not guilty." (5.) "The court charges the jury that a reasonable doubt is a doubt for which a reason can be given." (6.) "The court instructs the jury, that they must find the defendant not guilty, unless the evidence against him should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the offense imputed to him." (7.) "The court charges the jury, that they can take in consideration the fact, if it be a fact, and from the evidence such is a fact, that the defendant tendered the Singer Manufacturing Company, or agents, the amount, or greater dues than he owed them, together with all the other evidence, in determining whether or not there was a criminal intent in the defendant's action." (8.) "The court charges the jury, that they must believe from the evidence beyond a reasonable doubt that the defendant embezzled the amount of money charged in the indictment, and he did it willfully and intentionally and converted it to his own use." (9.) "The court charges the jury, that tf they believe from the evidence that Mr. Walker, the defendant in this case, offered to pay the Singer Manufacturing Company, or agent, and they refused to accept, and that was all due them, then they will find the defendant not guilty." (10.) "The court charges the jury, that they may look to the conduct of the witness on the stand and his manner of testifying, to determine what credit they shall give him." (11.) "The court charges the jury, that if they can explain the testimony in this, case on any hypothesis with the defendant's innocence, they must acquit him." (12.) "The court charges the jury, that they must believe the evidence conclusively as pre-

sented by the State before they can find the defendant guilty." (13.) "Before the jury are authorized to convict the defendant in this case, they must believe from the evidence to a moral certainty that he is guilty of the things charged in the indictment, and unless the jury are so satisfied from the evidence, they should acquit the defendant." (14.) "The court charges the jury, if the jury upon considering all of the testimony, have a reasonable doubt about the defendant's guilt, arising out of any part of the evidence, they should find the defendant not guilty." (15.) "The court charges the jury, if they believe from the evidence that the defendant tendered or offered the Singer Manufacturing Company or its agent, the amount of money due the said company, then they can not find the defendant guilty." (16.) "If the jury believe the testimony of the defendant they must acquit him." (17.) "The court instructs the jury, that they must take into account their experience among men to determine the credibility of the witness Walls."

WILHITE & AHLRICHS, for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.

HEAD, J.—The trial court sustained a demurrer to the second count of the indictment. The first and third counts were sufficient.—*Huffman v. State*, 89 Ala. 33.

If all the motions made by the defendant to correct or amend the minute entry of the first trial of the cause had been sustained, the record would have still showed that the jury remained together until 12 o'clock, midnight, of the last day of the term. That fact was not denied by any of the motions, though it was expressly recited in the entry of the mistrial. The jury not having rendered a verdict, were then discharged by operation of law, and it matters not what the clerk or any one else, then or thereafter, said to them by way of authority to them to disband. This is too obvious for discussion. So that, if the record had been made to read as the defendant desired, it would have afforded no aid to any defense he could have made to the further prosecution of the indictment.

There was interposed what was intended to be a special plea of former jeopardy. It set up the former trial, and alleged that after the jury retired to consider of their verdict, and during a recess of the court, they were allowed to disband, in the absence of the presiding judge and of the defendant, and without the consent of the defendant. It further set up that the facts so alleged were not shown by the minutes of the court, but on the contrary the minutes state that the jury was discharged by the court, in the presence of the defendant and a mistrial was ordered, all of which was untrue. On motion of the solicitor, this plea was stricken from the file against the objection and exception of the defendant.

It is obvious the court had no right to strike the plea, thereby denying the right of amendment if defective merely, unless it could properly be regarded as frivolous or impertinent. The defendant insists that such was not its nature, and that the State should have been put to its demurrer.

We remark that the disclosures of the record introduced by the defendant, and which it is scarcely possible for him to ever gainsay or dispute, render the question raised upon this plea, in reality, a pure abstraction. Unless the record, as made by the defendant himself, is a perversion of the facts, it can never be a matter of real dispute, that the jury remained together considering of their verdict, unmolested by any one, until at or about 12 o'clock, midnight, of the last day of the term, when the law itself discharged them. This being true, no plea of former jeopardy, based upon their disbandment without rendering a verdict, can ever be successfully interposed to bar further prosecution. The judgment of conviction appealed from will have to be reversed for errors hereafter to be pointed out, and anticipating that the special defense of former jeopardy will not be further insisted upon, we withhold decision of the question whether or not the State should have been put to its demurrer to the plea.

The court erred in refusing to allow defendant to prove by the witness, Walls, (who represented the Singer Manufacturing Co. in making with defendant the two written contracts of employment) that when the second contract was executed he, witness, stated to defendant that the company would pay defendant's office rent as it

[Walker v. The State.]

had done theretofore, and that defendant refused to sign the second contract until he made that promise. The proceeding, of course, was not for the enforcement of the contract between the Singer Company and defendant. It was a public prosecution of a charge of embezzlement made against the defendant by the grand jury, wherein the intent of the defendant, if he appropriated the moneys of his principal, as charged, was of most vital consideration. If the appropriation was not with the intent to defraud the employer but was honestly made, to pay the office rent, in reliance upon the agent's statement sought to be proven, as the defendant claimed to have been the case as to a part of the funds received by him, it would be manifestly unjust to deny the defendant the right to make proof of the promise of the agent as going to show his intent in making the appropriation. The rule that as between the parties to a written contract its terms cannot be added to, altered or varied by parol stipulations made at or before its execution has no application to the case. That will apply when the contracting parties come to litigate their rights evidenced by the contract.

The same observations apply to the refusal to permit defendant to make the like proof by his own testimony, and also to his effort to prove similar promises by the agent, Walls, in reference to payment by the company of repairs to the wagon used in the business of the agency.

It is obvious, however, that it was not proper for the State to prove by its witness—an agent of the Singer Co.—how much commissions the defendant was entitled to receive on collections. The written contracts regulated that, and were before the court, and there was no question of motive or intent, touching the issues involved in the prosecution, which that witness's views of what the allowable commissions were, would shed any light upon. It was not proposed to be shown even that when the written contracts were executed, or at any other time, there was any agreement between the parties that the commissions should be different from the stipulations of the written contracts, if such evidence should be regarded as material.

In the fall of 1895, the agent of the Singer Co. checked up the defendant's accounts, resulting very favorably to

the defendant, and made his written report to the company accordingly. When this agent was on the stand, for the State, testifying to the transactions of that period, the defendant, presenting to the witness the written report itself, asked him if he did not, after he got through checking the defendant, write the report to the company, and the court refused to allow the proof, which refusal is a matter of exception. It does not appear that this was for the purpose of impeachment of the witness, by contradictory statements. It was not for that purpose. So the only question is, was the report admissible as *res gestæ?* It sufficiently appears that it was the agent's duty and office to check up the defendant's accounts and make written report thereof to the company. The defendant paid to the agent the balance ascertained to be due on that accounting.

We are of opinion the report was a matter of *res gestæ* which the defendant was entitled to show. The settlement made was as between the parties, even, *prima facie* correct, and the defendant ought to have the benefit of it when charged with embezzlement of funds theretofore coming to his hands.

The ruling of the court was correct to the effect that defendant was not entitled to commissions on money not remitted to the company, or accounted for in any way that was equivalent to legal payment thereof to the company. If, however, commissions were retained by the defendant which strictly, by the contract, he was not entitled to retain, it will, yet, be for the jury to say whether or not, under all the circumstances of the case, the defendant acted with a fraudulent intent in doing so, for it must ever be borne in mind by the jury, that before the defendant can be adjudged guilty of a crime in this case, there must have been both a wrongful appropriation of *money* (not sewing machines or other property, *but money*) of the Singer Manufacturing Co., which came into defendant's hands, as agent of the company, and a fraudulent intent, in his mind, at the time of appropriation, to deprive the employer—the company—of the money so appropriated, and the evidence must be such as to satisfy the minds of the jury of the fraudulent intent, beyond a reasonable doubt; the burden of proof, in the matter, being on the State.

The court permitted the State to introduce an account

marked Exhibit B, which its witness Forbes, had, as agent of the Singer Company, made out against defendant, purporting to show sundry items of collections of money (thirty or more) which defendant had made as agent for the company, on sundry dates running from December, 1894, to January, 1896, aggregating $271.05, with an opposite statement "selling and remitting commissions" amounting to $55.62. The witness testified that in the spring of 1896 he called on defendant for a settlement, and that he and defendant, in the presence of Mr. Walls and Mr. McCumber (who were also agents of the company), went over the accounts between defendant and the company, and defendant admitted having collected and failed to pay over the amounts which are set out on said Exhibit B. He did not say, however, that Exhibit B was then in existence or that defendant ever saw it, at any time, or knew of its existence. In fact the witness further testified that he made the memorandum, B, not at the time defendant admitted the collections etc., nor while he was present, but made it from notes, at his room at the hotel, about an hour afterwards. The bill of exceptions recites that the exhibit "was not admitted as evidence but witness was permitted to examine it to refresh his recollection, and it might go to the jury the better to enable them to remember what witness said."

It is seen from the above statement, that witness does not show that the memorandum was made up from notes taken by him on the examination of defendant's accounts had by him with the defendant. Probably, such was the case, but it does not so appear. It could not be said, from his statement, when or from what data or evidence he made the notes from which the memorandum was made up. The notes may have been of the purest hearsay character, of the truth of which the witness had no knowledge, and possessing no binding force on the defendant. The witness did not testify to the truth of what the notes showed, nor how he knew it. Under these circumstances, we think it was not proper to permit the witness to refer to the memorandum to refresh his recollection.

There was no error in excluding the statement of the witness Griswold which was excluded by the court.

We now pass upon the charges requested by defendant and refused by the court:

[Walker v. The State.]

The first invaded the province of the jury and was bad.

The second was abstract.

The third ignores all question of honesty or good faith of defendant's claim to the commissions which he was asserting a right to, in opposition to the terms of his written contract, and that was a question for the jury.

It seems to us that the fourth asserts a correct legal proposition, and we think the court erred in refusing it.

The fifth was held good in *Hodge v. State*, 97 Ala. 37. The phraseology of the charge is different from that passed on in *Peagler v. State*, 110 Ala. 11, and as the case in 97 Ala. was not referred to or departed from we presume it was not the intention of the court to overrule that case.

The sixth omits the word reasonable as descriptive of hypothesis and was bad.

The seventh is or a kind that we have often condemned as argumentative. It also invaded the province of the jury.

The eighth might have misled the jury to believe that there could be no conviction unless the full sum of $200 was embezzled.

The ninth, tenth, eleventh and twelfth are faulty for reasons too obvious to need pointing out.

We see no objection to the thirteenth. It seems to assert the rule very many times declared correct by this court. It ought to have been given.

The fourteenth should have been given as we expressly held in *Hurd v. State*, 94 Ala. 100.

The remaining were obviously faulty and properly refused.

Let the defendant remain in custody until discharged by due course of law.

Reversed and remanded.