# CASES

IN THE

# SUPREME COURT OF ALABAMA

## NOVEMBER TERM, 1902.

## Hunt v. The State.

### Indictment for Murder.

1. *Organization of jury in capital cases; there should be special venire for each capital case.*—Under the provisions of the statute regulating the manner of drawing and summoning special juries in capital cases, a special venire must be drawn for each capital case (Code, § 5004); and it is error for the court to draw one special venire for the trial of two or more capital cases, where the defendants in each case are separately indicted for separate and distinct offenses.

2. *Confessions; when corpus delicti sufficiently proved.*—On the trial under an indictment for murder, where the evidence shows that the body of the deceased was found in a river some time after he was last seen alive; that there was a hole in his forehead and his skull was fractured, and there was a wound on his neck as if inflicted by a knife, and it was further shown that the deceased was employed on a steamboat which plied the river in which his body was found, and there was evidence introduced from which it could be inferred that there was a struggle between the deceased and the defendant and another person just before his body fell or was thrown in the river, there is sufficient proof of the *corpus delicti* to authorize the introduction in evidence of confessions made by the defendant.

3. *Confessions; what necessary to show they were voluntarily made.*—The promise which would render a confession voluntary in the eye of the law must have relation to the legal consequences of the confession itself, so as to involve some assurance of benefit to the defendant in respect of the crime under inquiry, as that he would not be prosecuted, or that his punishment would be mitigated; and the promise of

[Hunt v. The State.]

a mere collateral benefit of protection from the personal violence of those who acted with him in the commission of the crime is not sufficient to render the confession involuntary.

4. *Charge as to reasonable doubt.*—In a criminal case, a charge requested by the defendant which instructs the jury that if "upon considering all the evidence they have a reasonable doubt about defendant's guilt arising out of any part of the evidence they must find him not guilty," asserts a correct proposition of law and should be given.

5. *Indictment for murder; charge as to offense involved.*—A charge which instructs the jury that if they have "a reasonable doubt growing out of the evidence as to whether the killing was done deliberately or as to whether it was done premeditatedly, then they can not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt growing out of the evidence as to whether the killing was done out of malice, then they can not find the defendant guilty of murder in either degree, but only of manslaughter at most; and if, after considering all the evidence, the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty," is a correct charge, but the refusal of such a charge is not error where there is an absence of any evidence tending to reduce the homicide to manslaughter.

6. *Charge as to doubt.*—In the trial of a criminal case, a charge requested by the defendant which instructs the jury that "if the evidence or any part thereof, after a consideration of the whole of such evidence generates a well founded doubt of defendant's guilt, the jury must acquit him," asserts a correct proposition of law, and its refusal is error.

APPEAL from the Circuit Court of Baldwin.

Tried before the Hon. WILLIAM S. ANDERSON.

The appellant in this case, Hamp Hunt, was indicted and tried for the murder of Gilbert Howell and was convicted of murder in the second degree and sentenced to the penitentiary for ten years.

On the trial of the case the defendant moved the court to quash the special venire in the case upon the ground that there were three capital cases set for trial on the day this case was called and that the venire served on this defendant is the same special venire and was drawn at the same time and is composed of the

same names as the special venires drawn for the trial of the other two cases. On the hearing of this motion the ground of the motion was proved. The court overruled the motion to quash the venire, and to this ruling of the court the defendant duly excepted.

Isaac Howell, the father of Gilbert Howell, the deceased, as a witness for the State, testified that he found the body of Gilbert Howell in the Alabama river; that the body was face down when he found it; that there was a hole in the forehead and that the skull was broken just back of the ear; that the hole in the skull was about the size of two knuckles of the hand; that there was also a hole about the size of a knife blade in the neck of the body of Gilbert Howell. He further testified that Bill Spotts was with him when he found his son's body.

Willie Williams, a witness for the State, testified that he was indicted for the killing of Gilbert Howell; that he was on the boat the night it was said that Gilbert Howell was killed; that the defendant, Gilbert Howell, Orrin Thomas and some others were shooting craps on the boat that night; that after shooting craps awhile, Gilbert Howell started to the back of the boat to go down the steps and the defendant Hamp Hunt and Orrin Thomas went with him; that the witness heard a noise and ran to the head of the steps and saw the defendant half way down the steps and Orrin Thomas said that Gilbert Howell had fallen overboard and the witness never saw Gilbert Howell any more. Thereupon the witness Willie Williams was asked by the solicitor for the State the following question: "Did Hamp Hunt make any statement to you?" Upon the witness answering that he did, he was then asked whether he offered any inducement to him to get him to make any such a statement. Upon the witness answering that he did not, he was then asked was it free and voluntary, and upon the witness answering that it was, he was asked to state what Hamp Hunt stated to him. The defendant objected to this question upon the grounds that no sufficient predicate had been laid for the introduction of the confession and that the corpus delicti had not been proved, and that the said

question called for illegal, irrelevant and incompetent evidence. The court overruled the objection, and the defendant duly excepted. The witness stated "that Hamp Hunt, the defendant, stated to him, referring to the case, that he did it through passion; that he didn't aim to do it." Thereupon the defendant moved the court to rule out the testimony of the witness, Willie Williams, as to the statement made to him by the defendant upon the grounds that no sufficient predicate had been laid, and the *corpus delicti* had not been proved, and that the statement was incompetent and irrelevant. The court overruled the motion and the defendant duly excepted.

During the examination of Wilson Smith as a witness, and the subsequent examination of Isaac Howell, they were asked whether or not after it was alleged that Gilbert Howell was killed, they heard the defendant make a statement, and if so was such statement freely and voluntarily made and without any inducement? To each of these questions the witness said that upon Isaac Howell asking the defendant to tell him about it the defendant said: "If you save me from these boys, I will tell you the truth. All the people, black and white, know that Orrin Thomas is a desperado." That thereupon Isaac Howell said to the defendant: "All right, we will save you. We will have Orrin Thomas arrested." That thereupon the defendant stated that Orrin Thomas struck Gilbert Howell with his knucks and Willie Thomas struck at him with his knife and they then threw him overboard. The defendant separately objected to each of the questions propounded to the witnesses upon the ground that no sufficient predicate had been laid for the introduction of the confessions and that the *corpus delicti* had not been sufficiently proved, and also separately moved the court to exclude the testimony of each of such witnesses as to the statements made by the defendant upon the grounds that such statements were in the nature of a confession and were shown to have been made involuntarily and that there was no proof of the *corpus delicti*. The court overruled each of the objec-

tions, and also overruled each . of the motions. to ex-
clude the testimony, and to each of these several rul-
ings the defendant separately excepted. The defend-
ant introduced several witnesses who testified as to his
general good character.

The court at the request of the State gave to the jury
the following written charges: . (1.) "If you find from
the evidence in the case beyond a reasonable doubt,
that Gilbert Howell met his death at the hands of
Hamp Hunt, or at the hands of Hamp Hunt and Orrin
Thomas acting together, you must convict Hamp
Hunt." (2.) "If you cannot say from the evidence
beyond a reasonable doubt who killed Gilbert Howell,
that is whether it was Hamp Hunt or Orrin Thomas,
but can say from the evidence beyond a reasonable
doubt, that one of the two killed him, and that Hamp
and Orrin were acting together in the killing, the de-
fendant would be guilty, and it would be your duty to
convict him." (3.) "If you should find from the evi-
dence beyond a reasonable doubt that Gilbert Howell
came to his death at the hands of Orrin Thomas, but
further find from the evidence beyond a reasonable
doubt that Hamp aided or abetted in the killing you
should convict the defendant." (4.) "If the defendant
purposely killed the deceased with a wickedness or
depravity of heart towards him, and the killing was
determined on beforehand, and, after reflection, for
however short a time is immaterial, he is guilty of
murder in the first degree." (5.) "If the defendant in
this county before the finding of this indictment pur-
posely killed the deceased by striking him with metal
knucks, by cutting him with a knife, or by throwing
him overboard, or by means unknown to the grand
jury, after reflection with a wickedness or depravity
of heart towards the deceased, and the killing was de-
termined on beforehand, even a moment before the
fatal blow was struck,the defendant is guilty of mur-
der in the first degree."

The defendant separately excepted to the court's
giving each of these charges and also separately ex-
cepted to its refusal to give each of the following
charges requested by him : (1.) "If the jury upon

considering all the evidence have a reasonable doubt about defendant's guilt arising out of any part of the evidence they must find him not guilty." (2.) "If the jury have a reasonable doubt growing out of the evidence as to whether the killing was done deliberately or as to whether it was done premeditatedly, then they cannot find the defendant guilty of murder in the first degree, and if they have a reasonable doubt growing out of the evidence as to whether the killing was done out of malice then they cannot find the defendant guilty of murder in either degree but only of manslaughter at the most; and, if after considering all the evidence, the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty." (3.) "Proof beyond a reasonable doubt means that amount of proof which would ordinarily satisfy an unprejudiced mind to a moral certainty; the circumstances which will amount to this degree of proof can never be previously defined; the only legal test to which they are susceptible is their sufficiency to satisfy the mind of a prudent man and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interests." (4.) "If the evidence or any part thereof after a consideration of the whole of such evidence generates a well founded doubt of defendant's guilt, the jury must acquit him." (5.) "The court charges the jury that the law does not favor the admissibility of confessions, and if there be any doubt of their competency it should be resolved in accordance with the humane principles of our criminal law in favor of life and liberty and confession should not be believed by the jury unless plainly shown to be voluntary." (6.) "A confession of guilt, although voluntarily made, will not authorize a conviction unless independent of the confession the evidence is sufficient to authorize a conclusion beyond every reasonable doubt that the defendant is guilty." (7.) "If the evidence for the prosecution tends to establish the defendant's guilt, but the evidence in his favor tends to

establish his innocence, and the jury are not satisfied to a moral certainty which tendency is true, it is their duty to give the defendant the benefit of the doubt and acquit him."

MITCHELL & TONSMIERE and LESLIE HALL, for appellant.—The court erred in overruling the motion to quash the *venire*. It is necessary that a separate special *venire* should be drawn for each separate capital case.—Crim. Code, § 5004; *Adams v. State*, 133 Ala. 166.

The court erred in allowing testimony tending to show confessions on the part of the defendant.—*Matthews v. State*, 55 Ala. 187; *Harden v. State*, 109 Ala. 50; *Ryan v. State*, 98 Ala. 94; *Bowling v. State*, 98 Ala. 80; *Moses v. State*, 88 Ala. 78.

The first charge requested by the defendant asserted a correct proposition of law and should have been given.—*Hurd v. State*, 94 Ala. 100; *Forney v. State*, 98 Ala. 19; *Walker v. State*, 117 Ala. 45; *Adams v. State*, 113 Ala. 166.

The second charge requested by the defendant asserted a correct proposition of law and should have been given.—*Compton v. State*, 110 Ala. 34; *Stoneking v. State*, 118 Ala. 70; *Adams v. State*, 133 Ala. 166.

The other charges requested by the defendant were free from error and should have been given as requested.—1 Starkie on Evidence, 514; 1 Greenleaf on Evidence, § 2; *Briton v. State*, 107 Ala. 114.

CHAS. G. BROWN, Attorney-General for the State.

McCLELLAN, C. J.—The motion to quash the special *venire* for the trial of this defendant should have been granted. Section 5004 of the Code, under which this venire was drawn, requires that when capital cases stand for trial the judge shall draw from the jury box not less than twenty-five nor more than fifty names as special jurors *"for each capital case."* Here three distinct capital cases were set for the same day. For the trial of each and all of them the court drew fifty names from the box, and put these identical fifty

names on the separate *venires* for the trial of each of the three defendants, instead of drawing fifty different names for these several trials. This was error.— *Adams v. State*, 133 Ala. 166.

The *corpus delicti* was sufficiently proved by the testimony of the witnesses Isaac Howell and Willie Williams before evidence of confessions was offered by the State.

In laying the predicate for admitting evidence of confessions the proper course is to show the substantive facts that no inducements, promises and the like were held out or made to the defendant and that no threats or the like were indulged against him for the purpose of getting the statements from him which it is proposed to show he made at the time. That he made such statements freely and voluntarily is a conclusion to be drawn by the court when the substantive facts justify it and it is not for the predicate witness to draw and state.

The fact that incriminating statements of a defendant are made upon a promise of officers or citizens having him in custody that if he will tell the truth they will protect him against the wrath and vengeance of persons who are implicated or whom his statement implicates in the offense, does not render such statements inadmissible if they are otherwise voluntary. The *promise* which will render a confession involuntary in the eyes of the law must have relation to the legal consequences of the offense itself; it must involve some assurance of benefit to the defendant in respect of the crime under inquiry as that he will not be prosecuted or that his punishment will be mitigated and the like. The mere *collateral* benefit of protection from the personal violence of those who acted with him in the commission of the crime will not suffice.

The first charge requested by the defendant could hardly be abstract in any criminal case. It has been several times held by this court to assert a sound proposition of law.

Charge 2 refused to defendant is copied from *Compton v. State*, 110 Ala. 94, where it was held to be a correct charge; and this ruling has been reaffirmed in

*Stoneking v. State,* 118 Ala. 70, and *Adams v. State,* *supra.* Its refusal, however, in this case may be justified upon the absence of evidence tending to reduce the homicide to manslaughter.

Charge 4 asked by defendant "asserts a correct proposition and should have been given."—*Turner v. State,* 124 Ala. 59, 63.

The other charges requested by the defendant were properly refused and the court committed no error in giving the several charges requested by the State.

Reversed and remanded.